IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MELINDA MELVIN,**

        Plaintiff,

vs.                                  Civil Action 2:13-CV-91
                                         Judge Economus
                                         Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner
of Social Security,**

        Defendant.

**REPORT AND RECOMMENDATION**

This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court for consideration of plaintiff's *Statement of Errors*, Doc. No. 15, and the Commissioner's *Memorandum in Opposition*, Doc. No. 22. Plaintiff has not filed a reply.

Plaintiff Melinda Melvin filed the current - her third - application for benefits on September 29, 2009, alleging that she has been disabled since January 1, 2003, as a result of bipolar disorder and post-traumatic stress disorder ("PTSD"). *PAGEID* 232-34, 297.[1] The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

A hearing was held on August 17, 2011, at which plaintiff, represented by counsel, appeared and testified, as did Carl W.

---

[1] In the *Statement of Errors* filed with this Court, plaintiff amended her date of onset of disability to October 10, 2009, *i.e.*, the date on which plaintiff began a three-day psychiatric hospitalization in connection with suicidal ideation. S*tatement of Errors, PAGEID* 835.

Hartung, who testified as a vocational expert. In a decision dated October 28, 2011, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *PAGEID* 85-101. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 11, 2012. *PAGEID* 70-74.

Plaintiff was 36 years of age at the time of the administrative hearing. *PAGEID* 114.  She has a high school education.  *PAGEID* 116. Plaintiff has past relevant work as a cashier in the fast food and retail industries. *PAGEID* 100, 298. She lives with her teenage daughter, who has special needs and who receives supplement security income.  *PAGEID* 115-16, 138.  She has not worked since the date on which she filed her current application for benefits.  *PAGEID* 116.

**Plaintiff's Testimony**

Plaintiff testified at the administrative hearing[2] that she suffers from depression and anxiety.  *PAGEID* 118, 120. She has difficulty sleeping; she suffers almost daily crying spells that last up to 30 minutes. She also experiences panic attacks during which she experiences "real intense fear," *PAGEID* 120, for 15 or 20 minutes. *PAGEID* 121. She also has difficulty with memory and concentration: "I don't finish anything." *Id*.  She experiences mood swings every day, and manic episodes with the change of the seasons. *PAGEID* 135-36.

Plaintiff has difficulty getting along with other people. *PAGEID* 124. She was let go from a retail job because she "wasn't very kind to

---

[2] The administrative law judge found that plaintiff suffers from both physical and mental impairments.  Plaintiff challenges only the Commissioner's evaluation of her mental impairments. *Statement of Errors*, *PAGEID* 834.  The Court will therefor summarize only that evidence relevant to plaintiff's claims.

the customers." *Id.; PAGEID* 138. She gets into verbal arguments with grocery clerks. *PAGEID* 131-32. She does not talk to her neighbors and she fights a lot with her daughter. *PAGEID* 124. She does not see her mother and sister often, although she speaks with them on the telephone. *PAGEID* 125. She has no friends. *Id*. She does not like to leave her home. *PAGEID* 135.

On a typical school day, plaintiff gets her daughter up to make sure that she's ready for school. *PAGEID* 129.[3] She then lies back down and watches TV, listens to music or reads the Bible. *PAGEID* 132. She sometimes uses the computer. *PAGEID* 133. She does not usually go out because she doesn't "like to have to deal with people." *Id*. She does not clean her home. *PAGEID* 118. Her daughter's father "makes" her clean and get out of the house. *PAGEID* 130. Her mother takes her to the grocery store once per month; her case manager takes her to the food pantry. *Id.*

Plaintiff sees Bela Agabalyan, M.D., a psychiatrist, once per month and a case manager/therapist, who administers therapy at plaintiff's home, once per week. *PAGEID* 125-26, 134. She takes Geodon, trazodone, Celexa and Buspar, which cause drowsiness. *PAGEID* 126-27.

**Evidence**

In November 2005, Alan White, Ph.D., performed a consultative psychological evaluation for the state agency. *PAGEID* 395-401. Plaintiff complained of fatigue, changes in appetite and eating habits

---

[3] Plaintiff also testified, however, that it is her daughter's father who comes and gets both of them up. *PAGEID* 129, 137-38.

with weight loss, feelings of worthlessness, guilt, helplessness and hopelessness, a loss of interest in pleasing activities, crying spells, isolation, irritability, forgetfulness, frustration and avoidance of crowds/children/noise (although she socialized with family and friends on a weekly basis, *PAGEID* 397), and restlessness. *PAGEID* 396. She reported a history of suicidal ideation. *Id.* She performed household duties including cleaning, laundry, shopping, and cooking. *PAGEID* 398. On clinical examination, Dr. White found plaintiff to be tense, tearful, restless and fidgety; her speech was fast and pressured; her affect was irritable. *PAGEID* 398. She was oriented and there was no evidence of psychosis. *Id*. Dr. White diagnosed bipolar disorder, nos, panic disorder without agoraphobia, and a personality disorder, nos. *PAGEID* 399. He assigned a Global Assessment of Functioning ("GAF") score of 50.[4] *PAGEID* 400. According to Dr. White,

> Ms. Melvin's ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks is not impaired. Her ability to understand, remember, and follow instructions is not impaired. Her ability to relate to others, including fellow workers and supervisors is mildly impaired due to her personality disorder. Ms. Melvin's ability to withstand the stress and pressures associated with day-to-day work activity is moderately impaired due to Bipolar Disorder and Panic Disorder.

*PAGEID* 401.

---

3 The GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF of 45-50 indicates "severe symptoms ... or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)...." *Id.*

Plaintiff also underwent psychiatric treatment by James Christopher, M.D., from April 2005 through January 2007. *PAGEID* 403-31. Initially, plaintiff was diagnosed with PTSD, a mood disorder, attention deficit disorder and r/o bipolar disorder. *PAGEID* 423. In August 2005, plaintiff was assigned a GAF score of 40; by November 2006, her assigned GAF score was 80. *PAGEID* 408, 410, 412, 414, 416. In that same month, Dr. Christopher reported that plaintiff's mood was great, her medication was helpful, she was making good choices and she was doing "the best ever, since I have been working with her." *PAGEID* 408-09.

Plaintiff began mental health treatment at North Central Mental Health Services ("NCMHS") in December 2007. *PAGEID* 501-05. She was diagnosed with bipolar disorder, severe depression, and an anxiety disorder; she was assigned a GAF score of 52, which is suggestive of moderate dysfunction. *PAGEID* 504.

In 2009, plaintiff's boyfriend died and plaintiff was hospitalized for three days in October 2009 following plaintiff's articulation of a suicide plan. *PAGEID* 434-40; 446-67. Upon discharge, plaintiff's condition was characterized as stable and improved; she was not an imminent danger to herself or others. *PAGEID* 455. She was assigned a GAF score of 60. *Id*.

On November 10, 2009, plaintiff reported to an NCMHS psychiatrist, S. Nahar, M.D., that she had been doing well on prescribed medication before running out 3 days earlier. Plaintiff reported difficulty sleeping, feeling tired during the day, and

depression most of the time since her boyfriend's death. *PAGEID* 472-73. Plaintiff was prescribed Trazodone to help with her sleep. *Id.*

In December 2009, state agency psychologist Alice Chambly, Psy.D., reviewed the record. *PAGEID* 549-66. Dr. Chambly found that the record documents bipolar disorder, but that reports of panic attacks were not supported. *PAGEID* 551. According to Dr. Chambly, plaintiff had mild restriction in her activities of daily living, had moderate difficulties in maintaining social functioning and concentration, persistence, or pace, and had no episodes of extended decompensation. *PAGEID* 563. Dr. Chambly opined that plaintiff was moderately limited in her abilities to carry out detailed instructions, to work in coordination with or proximity of others, to complete a normal work day and work week without interruption from psychologically based symptoms, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. *PAGEID* 549-50. According to Dr. Chambly, plaintiff

> retains the ability to complete a range of simple, routine, low stress tasks that do not require strict production quotas or frequent changes. She is able to interact with others on a superficial basis, infrequently.

*PAGEID* 551.

Plaintiff was also hospitalized for five days in January 2010 for complaints of blurred vision, headaches, tremors, and unsteady gait. *PAGEID* 610. Plaintiff underwent a behavioral health consultation at

6

that time, which revealed soft speech, a depressed mood, and a flat affect. *PAGEID* 601. Hospital notes indicated that plaintiff's bipolar disorder had been controlled since her October 2009 psychiatric hospitalization. *PAGEID* 594. Discharge diagnoses included an adjustment disorder, *PAGEID* 607, and plaintiff was advised to follow-up with NCMHC. *PAGEID* 610.

Bela Agabalyan, M.D., plaintiff's treating psychiatrist at NCMHS, reported on January 27, 2010, that plaintiff's bipolar disorder was in partial remission. *PAGEID* 732-33.

Plaintiff underwent an updated diagnostic assessment at NCMHS on February 25, 2010. *PAGEID* 818-22. Plaintiff complained of insomnia, crying spells, anxiety, lack of appetite, irritability, racing thoughts and restlessness. On mental status examination, plaintiff's mood was depressed, and her affect was congruent. *PAGEID* 821. She was alert and oriented. There were no overt signs of psychosis. Plaintiff denied current suicidal and homicidal ideation. Her memory was intact and her insight and judgment were fair. *Id*. According to the examiner, plaintiff can perform activities of daily living independently at an adequate level, although "her depression is causing her to not perform at her standards." *Id*. Diagnoses were bipolar II disorder, most recent episode depressed, severe, without psychotic features, and anxiety disorder. *Id.* Plaintiff was assigned a GAF score of 50 and her prognosis was characterized as fair. *PAGEID* 822.

In April 2010, state agency psychologist Douglas Pawlarczyk, Ph.D., reviewed the record, including documents relating to

plaintiff's October 2009 psychiatric hospitalization and NCMHC's progress notes over the previous year. *PAGEID* 738-55. According to Dr. Pawlarczyk, the record documented bipolar disorder but not panic attacks. *PAGEID* 740. He characterized plaintiff's restrictions of activities of daily living as mild, and her ability to maintain social functioning and her concentration, persistence, or pace as moderate; plaintiff had experienced no episodes of extended decompensation. *PAGEID* 752. Dr. Pawlarczyk opined that plaintiff was moderately impaired in her abilities to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance and be punctual within customary tolerances, to complete a normal work day and work without interruptions from psychologically based symptoms, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. *PAGEID* 738-39. According to Dr. Pawlarczyk, plaintiff could complete tasks in a static environment with no strict production quotas and minimal contact with others. *PAGEID* 740.

In March 2010, plaintiff reported to Dr. Agabalyan that she remained depressed about her boyfriend's death. *PAGEID* 816. Plaintiff's mental status examination was normal in May 2010 and Dr. Agabalyan reported that plaintiff's bipolar disorder was in remission. *PAGEID* 814-15. In October 2010, plaintiff's bipolar disorder remained in remission. *PAGEID* 809. In March and April 2011, mental status examinations showed an anxious mood, age appropriate judgment, and

8

fair insight. *PAGEID* 805, 807. When last seen by Dr. Agabalyan on June 20, 2011, plaintiff continued to report fluctuating moods and anxiety. *PAGEID* 802.

In August 2011, Dr. Agabalyan completed a mental functional capacity assessment in which she found that plaintiff was extremely limited in her abilities to maintaining attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance and to be punctual within customary tolerances, to complete a normal work day and work week without interruption from psychological symptoms, and in her ability to set realistic goals or make plans independently of others. According to Dr. Agabalyan, plaintiff was markedly limited in her ability to understand and remember detailed instructions, and in her ability to ask questions or request assistance. Plaintiff was moderately limited in her abilities to work in coordination with or proximity to others without being distracted by them, to accept instructions and respond appropriately to criticism from supervisors and to respond appropriately to changes in the work setting. Dr. Agabalyan concluded that plaintiff was unemployable and would remain so for 12 or more months. *PAGEID* 829.

**Administrative Decision**

In his decision, the administrative law judge found that plaintiff's severe impairments consist of degenerative changes of the cervical spine, obesity, Meniere's disease, major depressive disorder, and post-traumatic stress disorder. *PAGEID* 90. The administrative law judge also found that plaintiff does not have an impairment or

combination of impairments that meet or medically equal any listed impairment, including Listings 1.04, 2.07, 12.04 and 12.06. *PAGEID* 90-93. The administrative law judge next found that plaintiff has the residual functional capacity to perform the full range of light exertion but was limited, from a mental standpoint, to simple and routine tasks in a relatively static environment that does not involve frequent changes in duties or processes, strict time or production standards, or more than brief and superficial contact with others. *PAGEID* 93.

In determining plaintiff's residual functional capacity, the administrative law judge accorded "great weight" to Dr. White's opinions. *PAGEID* 99. He also considered the opinions of Drs. Chambly and Pawlarczyk, finding that their "assessments are consistent with and are well supported by the objective medical evidence and accepted as an accurate representation of the claimant's status." *Id.*

The administrative law judge recognized Dr. Agabalyan as plaintiff's treating physician, but afforded "little weight" to her August 2011 opinion:

> . . . [H]er opinion is so extreme to be worthy of belief. The conclusion is inconsistent with the objective medical findings, including the psychiatrist's own reports, and is inconsistent with the claimant's reported level of functioning. For example, the conclusion that the claimant cannot set goals or make independent plans is inconsistent with the claimant's current functioning, which included living independently and insuring care for her special needs daughter. Indeed, progress notes from this source indicate that the claimant's mental symptoms have been stabilized on medications, which further contradict the source[']s conclusions, particularly with respect to issues involving concentration and persistence. Therefore, while the doctor may be considered a treating source within the meaning of 20 CFR 416.927, I find that her assessment is not supported by or consistent with the record as a whole.

*PAGEID* 99.

The administrative law judge also found that plaintiff's subjective complaints of disability by reason of her mental impairments were not fully credible:

> Although the medical evidence does support that the claimant has significant depression, anxiety and some PTSD, her psychotropic medications and psychotherapy controls her symptoms. She has had some exacerbations of her symptoms; however, the record does not show a need for frequent inpatient treatment or even frequent emergency room care.
>
> . . . .
>
> Other factors belie the claimant's allegations of disability. . . . [T]he record, including her testimony, shows that she can use public transportation as necessary. She lives with her special needs daughter [and] performs activities that are typically associated with maintaining a household. She also described leisure activities, such as reading, using a computer, watching television, and listening to music.
>
> Considering the criteria enumerated in the regulations for evaluating the claimant's subjective complaints, I conclude that her testimony is not credible. The objective evidence does not confirm the severity of the alleged pain and functional restrictions arising from the documented conditions, and the claimant's objectively established medical condition is not of such severity as to reasonably be expected to produce disabling discomfort or other disabling functional conditions.

*PAGEID* 98.

The administrative law judge found that plaintiff's residual functional capacity precludes the performance of her past relevant work. *PAGEID* 99. Relying on the vocational expert's testimony, the administrative law judge found that plaintiff can nevertheless perform other work that exists in significant numbers in the national economy. *PAGEID* 100. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *PAGEID* 101.

**Discussion**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In her *Statement of Errors*, plaintiff contends that the administrative law judge erred in his evaluation of Dr. Agabalyan's opinions and in his assessment of plaintiff's credibility. The Court will consider each contention in turn.

12

To be afforded controlling weight, the opinion of a treating medical source must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); 20 C.F.R. § 416.927(d)(2). Even where the administrative law judge declines to accord controlling weight to the opinion of a treating physician, the administrative law judge "must still determine how much weight is appropriate. . . ." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). In weighing the opinions of the treating physicians, the administrative law judge is required to consider such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 416.927(d)(2)-(6); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinions of a treating physician, *i.e.,* reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, at 376; *Rogers*, at 242, citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. However, an "exhaustive factor-by-factor analysis not required." *Francis v. Commissioner Social Sec. Admin.*, 414 Fed. Appx. 802, 804-05, 2011 WL 915719 (6th Cir. March 16, 2011).

In the case presently before the Court, the administrative law

13

judge's evaluation of Dr. Agabalyan's extremely restrictive opinion is sufficiently specific as to the weight given to that opinion and the reasons for that assessment. It is also apparent that the administrative law judge considered the appropriate factors in evaluating this opinion. Furthermore, the administrative law judge's reasons for assigning "little weight" to Dr. Agabalyan's opinion are supported by substantial evidence. Dr. Agabalyan's August 2011 opinion is inconsistent with her own treatment notes which repeatedly characterized plaintiff's condition as in partial remission and with plaintiff's largely normal status on mental examination. As the administrative law judge also found, Dr. Agabalyan's opinion was also inconsistent with the other objective evidence in the record, including evidence that, even after plaintiff's October 2009 psychiatric hospitalization, plaintiff's mental condition was improved and stable with medication.

The Court also concludes that the administrative law judge did not err in assigning "great weight" to Dr. White's opinion and in relying on the opinions of the state agency psychologists. Even though Dr. White rendered his opinion years before plaintiff's 2009 psychiatric hospitalization, that brief period of hospitalization ended, as noted *supra*, with plaintiff's discharge as stable and improved and with a GAF score of 60.

In short, the Court concludes that the administrative law judge's evaluation of the medical source opinions in the record applied the appropriate standards and enjoys substantial support in the evidence.

The Court likewise concludes that the administrative law judge did not err in his assessment of plaintiff's credibility. An

14

administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness' demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 755 (6th Cir. 2012); *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978).

In the case presently before this Court, the administrative law judge found that plaintiff's subjective complaints were inconsistent with the objective medical evidence, her relatively conservative treatment and her level of activity.  Again, these findings enjoy substantial support in the record.  Even if, as plaintiff argues, there is also evidence to the contrary, the Court must, under these circumstances, affirm the decision of the Commissioner.

It is therefore **RECOMMENDED** that the decision of the Commissioner be affirmed and that final judgment in favor of the Commissioner be entered pursuant to Sentence 4 of 42  U.S.C. § 405(g).

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,*

15

specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: December 31, 2013               *s/Norah McCann King*
                                        Norah McCann King
                                  United States Magistrate Judge